UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALBERT G. FRACCOLA, JR.,

       **Plaintiff,**

 vs.              6:25-cv-00034
                  (MAD/TWD)

HON. SCOTT J. DELCONTE;
HON. STEPHEN K. LINDLEY;
HON. MARK A. MONTOUR;
HON. E. JEANNETTE OGDEN;
HON. DONALD A. GREENWOOD;
1ST CHOICE REALTY, INC.;
GETNICK LIVINGSTON ATKINSON
GIGLIOTTI & PRIORE, LLP; and
ESTATE OF PHYLLIS FRACCOLA

       **Defendants.**
_____

**APPEARANCES:**          **OF COUNSEL:**

**ALBERT G. FRACCOLA, JR.**
14 Wadsworth Road
New Hartford, New York 13413
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**    **BRITTANY M. HANER, ESQ.**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants DelConte,
Lindley, Montour, Ogden, and Greenwood

**GETNICK LIVINGSTON ATKINSON**  **JEFFERY T. LOTTERMOSER, JR.,**
**& PRIORE, LLP**           **ESQ.**
258 Genesee Street, Suite 401
Utica, New York 13502
Attorneys for Defendant Getnick Livingston
Atkinson Gigliotti & Priore, LLP

**OFFICE OF PETER M. HOBAICA, LLC** **PETER M. HOBAICA, ESQ.**
2045 Genesee Street

1

Utica, New York 13501
Attorneys for Defendant Estate of Phyllis Fraccola

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, Albert G. Fraccola, Jr., commenced this action *pro se* on January 8, 2025. Dkt. No. 1. In his complaint, Plaintiff alleges that five New York state judges ("Judicial Defendants") violated his constitutional rights by issuing unfavorable rulings against him. *See id.* at ¶¶ 49-59. Specifically, Plaintiff brings his claims under 42 U.S.C. § 1983, alleging violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. *Id.* at ¶ 2. The complaint seeks injunctive and declaratory relief, as well as millions of dollars in compensatory and punitive damages. *Id.* at ¶¶ 60-63. There are three other non-judicial Defendants named in the complaint: 1st Choice Realty, Inc.; the law firm of Getnick Livingston Atkinson Gigliotti & Priore, LLC; and the Estate of Phyllis Fraccola. Dkt. No. 1.

The Estate of Phyllis Fraccola filed a verified answer on March 1, 2025, which suffered from a filing deficiency that counsel remedied. Dkt. Nos. 15, 23. Likewise, the Getnick law firm filed an answer on March 5, 2025, which also suffered from a filing deficiency that was quickly addressed. Dkt. Nos. 18, 21-22. Meanwhile, 1st Choice Realty does not appear to be represented by counsel and has not filed anything in this action.[1]

Judicial Defendants did not file an answer. Instead, they filed a motion to dismiss on May 6, 2025, for failure to state a claim. Dkt. No. 30. Plaintiff filed a response on June 16, 2025, Dkt.

---

[1] The record shows that a process server served a summons upon a person named Albert Fraccola, Jr., as president of Defendant 1st Choice Realty, at Plaintiff's home address. Dkt. Nos. 2-5, 14. The Court is uncertain whether Plaintiff essentially served the summons upon himself, or whether someone with the same name accepted the summons on behalf of Defendant 1st Choice Realty.

No. 42, and Judicial Defendants filed a reply on June 26, 2025, Dkt. No. 43. Without authorization from the Court, Plaintiff filed an additional response on July 9, 2025. Dkt. No. 45.

Judicial Defendants' motion to dismiss is now before the Court.

## II. BACKGROUND

Plaintiff's claims stem from his role as a shareholder of 1st Choice Realty, Inc. ("the Business"), a now-defunct corporation. Dkt. No. 1 at ¶¶ 6-8. He and an individual named Phyllis Fraccola were each fifty-percent shareholders until January 23, 2016, when Phyllis Fraccola passed away. *Id.* at ¶ 6. Plaintiff claims that he and Phyllis Fraccola agreed to dissolve the Business in 2002, *id.* at ¶ 7, which necessitated a winding up of the Business, *id.* at ¶ 8. However, Plaintiff claims he was prevented from winding up the Business because Phyllis Fraccola refused to meet with him. *Id.* at ¶ 9.

In 2003, Plaintiff took legal action against Phyllis Fraccola in New York State Supreme Court, Oneida County. *Id.* at ¶¶ 9-10. There, Justice John W. Grow (who is not a defendant in this action)[2] issued an order requiring both shareholders to take certain actions in furtherance of winding up the business. *Id.* at ¶ 12; *see also id.* at 30-31. Plaintiff alleges that Phyllis Fraccola did not comply, and in 2006, she and her attorneys (from the Defendant law firm) prepared two "spurious, fabricated, fake, forged[,] and false instrument deeds." *Id.* at ¶ 16; *see also id.* at 33-36, 38-42. According to Plaintiff, the first forged deed purported to convey a 1st Choice Realty-owned property in Marcy, New York for Phyllis Fraccola's "permanent personal use." *Id.* at ¶ 17. Likewise, Plaintiff claims the second forged deed conveyed a 1st Choice Realty-owned property

---

[2] The complaint contains allegations that Justice Grow lacked jurisdiction to issue a separate order in 2005. Dkt. No. 1 at ¶¶ 39, 41. The complaint also alleges that Justice Grow engaged in impermissible *ex parte* communications with an attorney in that matter. *Id.* at ¶ 42. However, neither Justice Grow nor the attorney are defendants in this case, and these allegations appear wholly unrelated to the claims that Judicial Defendants now seek to dismiss.

3

in Troy, New York for the same purpose. *Id.* In August 2006, Phyllis Fraccola and her lawyers allegedly filed the fraudulent deeds with the county clerks in Oneida County and Rensselaer County, respectively. *Id.* at ¶ 19; *see also id.* at 36, 42. As a result, Plaintiff alleges that he has spent nearly two decades bringing "numerous Court actions to recover for the millions of dollars criminally purloined from" him and from the Business. *Id.* at ¶ 21.

In 2022, Plaintiff sued Defendants 1st Choice Realty, Getnick law firm, and Estate of Phyllis Fraccola in New York State Supreme Court, Oneida County. *Id.* at ¶¶ 27-28; *see also Fraccola v. 1st Choice Realty*, No. CA2022-002865, 2023 WL 11014946 (Sup. Ct. Oneida Cnty. Apr. 6, 2023). According to Plaintiff, his objective was to finally wind up the Business, which he characterizes as "in dissolution since January 7, 2004." Dkt. No. 1 at ¶¶ 27-28. As the presiding Supreme Court justice, Judicial Defendant Scott DelConte (now a justice of the New York State Supreme Court Appellate Division, Fourth Department) dismissed Plaintiff's complaint with prejudice in 2023. *Id.* at ¶ 35; *see Fraccola*, 2023 WL 11014946, at *2-3. In the decision, Judicial Defendant DelConte admonished Plaintiff for repeatedly filing "frivolous, vexatious[,] and meritless motions" and "unabashedly disregard[ing] the prior orders" of other judges. *Fraccola*, 2023 WL 11014946, at *1-2. Plaintiff appealed the 2023 DelConte decision to the Fourth Department, which he tangentially mentions in his complaint. *See* Dkt. No. 1 at ¶ 28; *Fraccola v. 1st Choice Realty, Inc.*, 224 A.D.3d 1227 (4th Dep't 2024). There, a panel comprised of Judicial Defendants Stephen Lindley, Mark Montour, E. Jeannette Ogden, and Donald Greenwood "unanimously affirmed" the decision. *Fraccola*, 224 A.D.3d at 1227.

In the complaint, Plaintiff alludes to his unsuccessful prior legal pursuits with minimal specificity, arguing that "past and present lower Court Judges, Appellate Court Judges with opposing attorneys, in concert or separately for two (2) decades, crushed the dissolution process

for 1st Choice Realty . . . ." Dkt. No. 1 at ¶ 33. In light of those repeated unfavorable rulings, Plaintiff now alleges that Judicial Defendant DelConte's 2023 order represents "an untrustworthy fabricated narrative to cover-up the two (2) Getnick law firm and then Phyllis Fraccola's alleged criminal forged and fake deeds." *Id.* at ¶ 38. Ultimately, Plaintiff contends that Judicial Defendants "orchestrated the deprivation of Plaintiff's Civil Rights and Civil Liberties" by "seiz[ing] Plaintiff's property" without a jury trial and depriving him of the opportunity to "present evidence for his grievances." *Id.* at ¶ 54.

In support of this argument, Plaintiff claims that Judicial Defendants acted as individuals—rather than in their judicial roles—to "maliciously, intentionally[,] selectively[,] and unfairly deprive[] [him of] his Constitutional rights to settle his grievances by Due Process and equal protection of the law by Jury Trial." *Id.* at ¶¶ 52, 58. Although Plaintiff refers to "ten (10) causes of action" in his complaint, he does not expressly identify any causes of action by number. *Id.* at ¶ 61. Broadly, he appears to seek extensive monetary damages, vacatur of prior unfavorable state court decisions, a declaration that Defendants violated his constitutional rights, a declaration that the Marcy and Troy deeds are invalid, and an injunction requiring him to complete the winding up process for 1st Choice Realty. *See id.* at ¶¶ 60-63.

### III. DISCUSSION

**A.    Standard of Review**

   ***1.   Subject Matter Jurisdiction: Rule 12(b)(1)***

As a threshold matter, "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523

U.S. 83, 93-102 (1998)); *see Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed" (citation omitted)). Federal Rule of Civil Procedure 12(b)(1) provides subject matter jurisdiction as a ground for a party's motion to dismiss. *See* Fed. R. Civ. P. 12(b)(1). A court may also raise the issue of subject matter jurisdiction *sua sponte* at any time. *Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 700. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

### 2. *Dismissal for Failure to State a Claim: Rule 12(b)(6)*

If the Court is satisfied that it has subject matter jurisdiction over a case, a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of the pleader's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, courts may still consider documents attached to the pleading as an exhibit or incorporated by reference into the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). A court may also consider documents that are "integral" to the pleading, even if they are not physically attached or incorporated by reference. *See id.* (quoting *Chambers*, 282 F.3d at 152-53). Courts must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability" generally does not meet the pleading standard. *See id.* (quoting *Twombly*, 550 U.S. at 557).

However, complaints by *pro se* parties must receive greater deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a *pro se* complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002). To that end, Plaintiff does not expressly state whether he is suing Judicial Defendants in their official or individual capacities. Because that distinction is critical in civil rights cases, and because the Court must liberally construe Plaintiff's pleadings to raise the strongest possible arguments, both approaches are addressed.

**B.    Eleventh Amendment Immunity (Official Capacity)**

As mentioned, if a federal court concludes that it lacks subject matter jurisdiction over a claim, it must dismiss that claim. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(b)(1). "The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against a state or one of its agencies absent their consent to such a suit or an express statutory waiver of immunity." *Kilcher v. N.Y. State*

*Police*, No. 1:19-CV-00157, 2019 WL 2511154, *3 (N.D.N.Y. June 18, 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984)).  When a plaintiff sues a state official, Eleventh Amendment immunity depends on whether the suit is essentially against the state itself.  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101.  On that issue, this Court has recognized immunity for state officers, including state court judges, "who are sued in their official capacity . . . ."  *Jemzura v. Pub. Serv. Comm'n*, 961 F. Supp. 406, 412 (N.D.N.Y. 1997); *see Samodovitz v. Troutman*, — F. Supp. 3d —, No. 1:24-CV-1508, 2025 WL 2415632, *4-5 (N.D.N.Y. Aug. 21, 2025) (citing *Griffin v. Maryland*, 378 U.S. 130, 135 (1964)) (holding that the judges of the New York Court of Appeals are unquestionably "state actors under § 1983" and therefore "immune from suit under the doctrine of sovereign immunity").

Importantly, this immunity is not absolute.  The narrow *Ex Parte Young* exception is sometimes available when a plaintiff sues a state officer in her official capacity for injunctive relief and "challeng[es] the constitutionality of a state official's actions in enforcing state law . . . ."  *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (citing *Ex Parte Young*, 209 U.S. 123, 154 (1908)); *see also Anghel v. N.Y. State Dep't of Health*, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013) (recognizing the same exception in suits for declaratory relief against a state officer in her official capacity).  To determine whether the exception applies, courts "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *CSX Transp., Inc.*, 306 F.3d at 98 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  This "does not include an analysis of the merits of the claim."  *Verizon Md., Inc.*, 535 U.S. at 646 (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)).  However, Plaintiff must still sufficiently plead "plausible and nonconclusory factual allegations" to support

application of the exception. *Kelsey v. Kessel*, No. 24-1105, 2025 WL 1324213, *1 (2d Cir. May 7, 2025). Again, because Plaintiff is *pro se*, the Court construes his pleading liberally. *Elmore v. Harriman*, No. 5:24-CV-186, 2025 WL 1682624, *4 (N.D.N.Y. June 16, 2025).

### 1. Claims for Monetary Damages

As a threshold matter, New York has not consented to suit or statutorily waived sovereign immunity. *Samodovitz*, 2025 WL 2415632, at *4 (citing *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 300 (N.D.N.Y. 2019)). Additionally, the law is clear that state court judges are eligible for Eleventh Amendment immunity from civil suits for money damages in their official capacities. *See, e.g.*, *id.* at *5; *Aron v. Becker*, 48 F. Supp. 3d 347, 366-68 (N.D.N.Y. 2014); *see also Gollomp v. Spitzer*, 568 F.3d 355, 366-67 (2d Cir. 2009) (holding that the New York State Unified Court System is an arm of the state that is immune from suit under the Eleventh Amendment). Furthermore, because the *Ex Parte Young* exception does not apply to claims for monetary damages, the Court need not analyze the exception at this step. Thus, the Eleventh Amendment immunizes Judicial Defendants from suit for monetary damages in their official capacities, prevents the Court from exercising jurisdiction, and necessitates dismissal of those claims.

### 2. Claims for Declaratory and Injunctive Relief

With the understanding that Judicial Defendants are eligible for immunity in their official capacities, Plaintiff's claims for declaratory and injunctive relief must fail unless the *Ex Parte Young* exception applies. As explained, the exception is narrow. For the exception to apply, Plaintiff must allege sufficient facts to show that Judicial Defendants engaged in an ongoing violation of federal law, and must request relief that is prospective in nature. *See CSX Transp., Inc.*, 306 F.3d at 98.

Even under the liberal construction required for *pro se* pleadings, Plaintiff's complaint does not appear to allege that Judicial Defendants are engaged in an *ongoing* violation of federal law, and most of his claims are *retrospective*, rather than prospective. For example, Plaintiff claims that Judicial Defendants violated his constitutional rights by ruling against him and seeks vacatur of prior state court decisions, a declaration that Judicial Defendants violated his constitutional rights when they issued their unfavorable decisions, and a declaration that the Marcy and Troy deeds are invalid. Furthermore, even if the Court construes Plaintiff's request for an injunction requiring him to wind up the Business (or any of his other claims) as prospective, his claims are not associated with any cognizable ongoing violation of federal law by Judicial Defendants. Rather, the relief that Plaintiff seeks is connected to alleged past wrongdoings, which cannot support application of the exception. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (stating that the *Ex Parte Young* exception "does not permit judgments against state officers declaring that they violated federal law *in the past*" (emphasis added)). Thus, the *Ex Parte Young* exception is unavailable, and Judicial Defendants are immune in their official capacities from Plaintiff's claims for declaratory and injunctive relief. The Court accordingly dismisses those claims for lack of jurisdiction.

**C.     Judicial Immunity (Individual Capacity)**

   *1.  Claims for Monetary Damages*

Although separate from Eleventh Amendment immunity, the doctrine of judicial immunity also protects judges from suits for money damages based on actions taken pursuant to their judicial role. *See Aron*, 48 F. Supp. 3d at 363. Where this immunity applies, it is absolute. *Id.* (citing *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Forrester v. White*, 484 U.S. 219, 225-26 (1988)). There are two situations where judicial immunity does not apply: (1) "when the judge

takes action 'outside' his judicial capacity"; and (2) "when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" *Id.* (quoting *Mireles*, 502 U.S. at 11-12). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Brady v. Ostrager*, 834 Fed. Appx. 616, 618 (2d Cir. 2020) (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)). On the other hand, where a judge did engage in judicial acts, immunity will be denied "where he (i) acts in the clear absence of all jurisdiction; and (ii) knew or must have known that he was acting in such a manner." *Id.* (quoting *Tucker v. Outwater*, 118 F.3d 930, 936 (2d Cir. 1997)).

In a judicial immunity analysis, courts must "broadly" construe the scope of the defendant judge's jurisdiction. *Aron*, 48 F. Supp. 3d at 363-64 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Furthermore, a court must analyze the defendant judge's jurisdiction separately from any alleged erroneous or malicious action. *See Stump*, 435 U.S. at 356-57. According to the Supreme Court, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* (citation omitted).

Plaintiff argues that "denial of Constitutional and Civil Rights [is] absolutely . . . not a Judicial function and conflicts with any definition of Judicial function . . . ." Dkt. No. 1 at ¶ 49. Plaintiff also alleges that Judicial Defendants acted outside the scope of their jurisdiction by ruling according to "their own prejudices and goals." *Id.* at ¶ 52. However, Plaintiff fails to plead any articulable facts showing that Judicial Defendants' personal prejudices motivated their unfavorable rulings or that they otherwise acted as individuals, rather than as judges. He also fails to plead any facts tending to show why the New York State Supreme Court and Appellate Division would lack jurisdiction over Plaintiff's dispute with 1st Choice Realty, the Estate of

Phyllis Fraccola, and the Getnick law firm. *See* N.Y. JUD. LAW § 140-b. His complaint is also devoid of any facts that would support an inference that Judicial Defendants were doing anything other than the quintessential function of their job: issuing decisions on matters of law.

Even after applying the most liberal construction possible, the Court rejects Plaintiff's argument that Judicial Defendants acted as self-interested individuals—rather than as judges—when they issued judicial decisions unfavorable to him. Furthermore, insofar as Plaintiff intended to sue Judicial Defendants in their individual capacities for their official actions, judicial immunity shields them from Plaintiff's claims for monetary damages. Immunity applies because Judicial Defendants clearly acted within the scope of their judicial role, and because Plaintiff fails to allege any specific facts—beyond his personal displeasure with their unfavorable rulings—to show that Judicial Defendants flouted their jurisdiction.

### 2. *Claims for Retrospective Declaratory Relief*

As to Plaintiff's claims for retrospective declaratory relief, the Second Circuit has recognized that judicial immunity protects judges from suits for declaratory relief based on past conduct. *See Shtrauch v. Dowd*, 651 Fed. Appx. 72, 74 (2d Cir. 2016) (holding that the plaintiff was not "entitled to declaratory relief because he allege[d] only past conduct and [did] not seek to prevent an ongoing or future violation of federal law") (citation omitted). As described, Plaintiff bases his claims for declaratory relief on the past conduct of Judicial Defendants (by way of their unfavorable rulings) and others (by way of the production and recording of the Marcy and Troy deeds).[3] Accordingly, Judicial Defendants are immune on these claims, even to the extent that Plaintiff intended to sue them in their individual capacities.

---

[3] Additionally, with respect to the deeds, Plaintiff only offers conclusory statements of their invalidity. *See* Dkt. No. 1 at ¶¶ 16-19. Thus, even if immunity and jurisdiction were not a

### 3. *Claim for Prospective Injunctive Relief*

Turning to Plaintiff's claim for prospective injunctive relief, it is critical to note that judicial immunity does not always protect judges against that type of relief. *See Pulliam v. Allen*, 466 U.S. 522, 536-37 (1984). "[S]uch relief is available against judicial officers only when 'a declaratory decree was violated or declaratory relief was unavailable.'" *Sibley v. Watches*, No. 24-855, 2025 WL 2448202, *2 (2d Cir. Aug. 26, 2025) (quoting 42 U.S.C. § 1983). Here, because Plaintiff did not identify a declaratory decree that Judicial Defendants allegedly violated, "nor did he establish that declaratory relief was unavailable[,]" judicial immunity applies, shielding Judicial Defendants from liability in their individual capacities. *Id.* at *2 (citing *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)); *see also Hahn v. New York*, 825 Fed. Appx. 53, 54-55 (2d Cir. 2020) (affirming a New York State Supreme Court justice's immunity from a claim for injunctive relief—even in his individual capacity—because the plaintiff did not allege "a violation of a judicial decree or that declaratory relief was unavailable").

## D. *Rooker-Feldman* Doctrine

In addition to the aforementioned jurisdictional doctrines, the *Rooker-Feldman* doctrine prevents this Court from exercising jurisdiction over Plaintiff's claims against all Defendants. "The *Rooker-Feldman* doctrine bars 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Mann v. N.Y. State Ct. of Appeals*, No. 1:21-CV-49, 2021 WL 5040236, *5 (N.D.N.Y. Oct. 29, 2021) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Four requirements

---

concern here, the complaint contains insufficient information for the Court to declare the deeds invalid.

must all be met for the doctrine to apply: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)).  The Second Circuit has further emphasized "that the second requirement – that the plaintiff complains of an injury *caused* by a state-court judgment – is the core requirement from which the other *Rooker-Feldman* requirements derive." *Id.* (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)).

Here, it is clear that Plaintiff lost in state court, the at-issue state court judgments were handed down before Plaintiff brought the present action, and Plaintiff is now inviting district court review and rejection of the unfavorable judgments.  Dkt. No. 1 at ¶¶ 28, 33, 35, 60; *see also Fraccola*, 2023 WL 11014946, *aff'd*, 224 A.D.3d 1227.  As to the second element, the complaint makes clear that Plaintiff's injuries were caused by the state court judgments.  *See, e.g.*, Dkt. No. 1 at ¶¶ 36 (referring to Judicial Defendant DelConte's 2023 order as "[a] profound deprivation of [Plaintiff's] Civil Rights and Civil Liberties when taking of Plaintiff's Life, Liberty and seizure of his property lacking a Constitutional Jury Trial with due process of law"), 51 (accusing Judicial Defendants of "act[ing] against and violat[ing] established statutory and Constitutional rights of Plaintiff . . . "), 53 (stating that "the New York State Corrupt Judges . . . knew or had to know, or reasonably knew, that their actions, taken within the sphere of official responsibility, would violate" Plaintiff's constitutional rights).  Accordingly, all four *Rooker-Feldman* requirements are met, and dismissal of the complaint is warranted on this alternative ground with respect to all Defendants.

Because the Court lacks subject matter jurisdiction to decide this case, it does not opine on the merits of Plaintiff's claims.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Judicial Defendants' motion to dismiss[4] (Dkt. No. 30) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in all Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 19, 2025
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[4] The Court recognizes that Defendants 1st Choice Realty, Inc.; Getnick law firm; and Estate of Phyllis Fraccola have not moved to dismiss. However, because the Court may raise the issue of subject matter jurisdiction *sua sponte*, it dismisses Plaintiff's claims against those Defendants due to the *Rooker-Feldman* doctrine. Moreover, none of those Defendants are state actors and, therefore, were not acting under color of state law.